# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter A. Kaminski,<br><br>Plaintiff,<br><br>vs.<br><br>UNUM Life Insurance Company of America,<br><br>Defendant. | Case No.: _____<br><br><br>**PLAINTIFF'S COMPLAINT** |

Plaintiff, through his undersigned attorneys, states and alleges as follows:

## GOVERNING LAW, JURISDICTION AND VENUE

1. This Complaint arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*. ("ERISA"), and the principles of federal common law developed thereunder.

2. This Court has jurisdiction pursuant to the jurisdictional provision of ERISA, 29 U.S.C. §1132(e)(1), and federal question jurisdiction under 28 U.S.C. §1331.

3. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2).

1

## PARTIES

4. Plaintiff Peter A. Kaminski lives in the City of Minnetonka, Minnesota.

5. Plaintiff was formerly employed by Land O'Lakes, Inc. and participated in its employee benefit plans including the short-term disability ("STD"), long-term disability ("LTD"), and group life insurance benefit plans.

6. The STD plan was sponsored and funded by Land O'Lakes, but claims were administered by Defendant UNUM Life Insurance Company of America ("UNUM").

7. The LTD benefit plan was sponsored by Land O'Lakes but funded through an insurance policy issued by UNUM bearing policy number 99345.

8. The group life insurance policy was sponsored by Land O'Lakes but funded through an insurance policy issued by UNUM. The group life insurance policy contained a provision that granted continuing life insurance and waiver of premium for insureds who became disabled within the meaning of the life insurance policy.

9. UNUM is a provider of group insurance products. UNUM has its state of domicile located in Maine. UNUM is licensed to sell disability and life insurance products in the State of Minnesota.

10. UNUM was the duly appointed claims administrator and claims review fiduciary for the three plans identified above.

## FACTUAL ALLEGATIONS

*Plaintiff's Spinal Cord Injury*

11. On August 17, 2008, while he was on summer break from college, Plaintiff was severely injured when he dove off a boat into Lake Minnetonka in Minnesota, fracturing his neck.

12. Plaintiff underwent surgery at North Memorial Hospital in Robbinsdale, Minnesota to stabilize his condition which included a cervical fusion of the C4-C5 levels.

13. Plaintiff's injury was classified as an American Spinal Injury Association ("ASIA") Impairment Scale D tetraplegia where tetraplegia means that all four extremities were impacted and Scale D means that: (1) the impairment is incomplete; (2) motor function is preserved below the neurologic level; and (3) at least half of the key muscles below the neurologic level have a muscle grade of 3 meaning that they can be moved against gravity.

14. Plaintiff was initially paralyzed in all four limbs but slowly, over approximately two years, Plaintiff regained motion in all limbs as a result of the cervical fusion and intensive rehabilitation care at the spinal injury program of Craig Hospital in Denver, Colorado.

15. Plaintiff missed only one semester of college and was able to graduate from the University of Colorado at Boulder with a degree in environmental science.

*Plaintiff's Employment at Land O'Lakes*

16. After college Plaintiff worked for Land O'Lakes as a Quality Assurance Intern. He had several promotions and was in the position of Sr. Sourcing Analyst/Buyer as of October of 2016.

17. While working for Land O'Lakes, Plaintiff's work responsibilities increased, and this caused exacerbation of the residual symptoms he experienced from the diving accident.

18. In particular, the job of Sr. Sourcing Analyst/Buyer required that Plaintiff sit most of the time and this significantly exacerbated his symptoms which included severe neck pain, muscle spasms throughout his body, insomnia, anxiety, and depression.

19. Plaintiff used opiate medications and had cervical spine injections for pain; but these did not work. Plaintiff also became very

concerned about the long-term effects and tried to wean himself from dependence on opioids.

### *Plaintiff's 2015 Disability Leave*

20. In June of 2015, Plaintiff's symptoms increased to the point that he could not work. He took a disability leave from Land O'Lakes.

21. While off work, Plaintiff returned to Craig Hospital in Denver, Colorado for additional evaluations and care recommendations. He was diagnosed with deafferentation neuropathic pain from the spinal injury and told that he should start taking anti-spasm medication, engage in multi-disciplinary conservative care to manage his chronic pain, continue mental health care treatment, and look for a different type of job that would allow him to move more.

22. Plaintiff applied to UNUM, as the administrator of the Land O'Lakes STD plan, and was awarded STD benefits for the entire period of STD entitlement from June 16, 2015 through December 5, 2015.

23. Plaintiff then applied for and was awarded LTD benefits from UNUM covering the period of December 5, 2015 through January 17, 2016 at which point he was released to return to work.

24. Upon returning to work, Plaintiff continued to have treatment.

25. Plaintiff arranged with his employer to work from home on a regular basis, although he still had to be at the workplace a couple of times a week. Working from home allowed for better positional changes. Plaintiff also began interviewing for other jobs within Land O'Lakes that would allow him greater freedom to move.

26. By July of 2016, Plaintiff was having serious issues with pain and insomnia and the anti-spasm medication he had been prescribed was no longer working. Plaintiff was referred to Dr. Leela Engineer, a specialist in Physical Medicine and Rehabilitation at Park Nicollet Medical Center in the Twin Cities.

27. Plaintiff's first visit with Dr. Engineer was September 9, 2016. By then Plaintiff's pain was diffuse--in his neck, upper back, low back, and bilaterally in his arms and legs.

28. Dr. Engineer diagnosed chronic neck pain related to post-cervical fusion, cervical spinal cord injury sequela, neuropathic pain, and depression.

29. Dr. Engineer advised Plaintiff to stop working and start an even more aggressive conservative care protocol involving physical therapy, occupational therapy, acupuncture, medication, and mental health care.

30. Plaintiff was nervous about losing his paycheck, so he did not immediately stop working.

31. However, by late October of 2016, the pain was so severe that Plaintiff could not stand it any longer. October 24, 2016 was his last day at work. He has not worked since then.

### *Plaintiff's 2016 Disability Leave*

32. Plaintiff again applied to UNUM for STD benefits. He was approved and received the full six months of STD benefit entitlement from November 1, 2016 through April 22, 2017.

33. In early April of 2017, Plaintiff applied to UNUM for LTD benefits

34. In support of Plaintiff's LTD application, Dr. Engineer opined that despite doing multiple therapies, Plaintiff was still experiencing severe neuropathic pain in the neck and upper and lower extremities, which could be worsened with any significant sitting or standing. Additionally, he was experiencing insomnia, fatigue, anxiety, and depression. As a result, Dr. Engineer opined that Plaintiff would not be able to perform his job duties.

35. In late April of 2017, Land O'Lakes eliminated Plaintiff's position and he was terminated.

36. By letter dated May 31, 2017, UNUM advised Plaintiff that it was denying his LTD claim on the grounds that he had not shown he was unable to perform his job.

*Appeal from LTD Denial*

37. On December 29, 2017, Plaintiff's former attorney, Diana Young Morrissey, submitted an appeal from the LTD denial to UNUM.

38. The appeal included medical records from Craig Hospital related to Plaintiff's 2015 evaluation (not obtained by UNUM previously), an extended letter of counsel, and a Physical Abilities Test ("PAT") report prepared by John Hovde, PT, of Saunders Therapy and dated December 11, 2017.

39. The PAT report concluded that Plaintiff had widespread sensory impairment, impaired balance and coordination with bilateral upper and lower extremity clonus (muscle spasm involving repeated, often rhythmic, contractions). Plaintiff showed impaired dexterity and clonus in his wrists and forearms, mild impairment of balance, and loss of strength. Mr. Hovde opined that Plaintiff's hands and fingers showed that typing was effortful and slow.

40. UNUM reviewed the appeal and concluded in a letter dated February 9, 2018 that Plaintiff was not entitled to LTD benefits because he was able to work full time at his own occupation.

41. Additionally, UNUM wrote that the waiver of premium for disability benefit that was a part of the UNUM group life insurance policy would also be denied for the same reasons that LTD was being denied.

42. This dual-purpose appeal denial letter concluded by advising Plaintiff that he had the right to bring suit based on ERISA to challenge the decisions further.

*Language of Plan/Policies*

43. The UNUM STD plan defines disability as follows:

> You are considered Disabled under this Plan if the Claims Administrator (in its sole discretion) determines that:
>
> --You are limited from performing the material and substantial duties of your occupation with the Employer due to your sickness, injury or pregnancy; and
>
> --You have a 20% or more loss in regular per payroll period Covered Earnings due to that same Sickness, Injury or pregnancy.

44. The UNUM LTD policy defines disability as follows:

> [For the first 24 months of payments] You are disabled when Unum determines that:

--you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

--you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

45. The UNUM LTD policy is governed by the laws of the State of Minnesota to the extent not preempted by federal law.

46. The UNUM LTD policy was issued in 2013 but was amended in total effective May 1, 2016.

47. The UNUM group life insurance policy waiver of premium language is as follows:

You are disabled when UNUM determines that:

--during the elimination period, you are not working in any occupation due to your injury or sickness; and

--after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably suited by training, education or experience.

**COUNT I: CLAIM FOR BENEFITS DUE UNDER 29 U.S.C. §1132(a)(1)(B)**

48. Plaintiff incorporates all preceding allegations in this Complaint and further alleges as follows.

49. Plaintiff has exhausted his administrative remedies under the LTD policy.

10

50. Any failure to exhaust administrative remedies under the UNUM life insurance policy's waiver of premium provision is excused or an appeal would be futile.

51. Plaintiff satisfied the definitions of disability in the UNUM LTD policy and the UNUM life insurance policy from the date of first entitlement and continuing thereafter to the present.

52. UNUM's decision to deny LTD and life waiver of premium benefits to Plaintiff is in breach of the policies and ERISA.

**WHEREFORE**, Plaintiff demands judgment against UNUM ordering the following:

(i) Pay him all past due LTD benefits plus interest through the date of judgment;

(ii) Reinstate him into the LTD policy and commence the payment of monthly LTD benefits going forward from the date of judgment according to the terms of the policy;

(iii) Reinstate him into coverage under the life insurance policy with full waiver of premium from the date of entitlement to the present and continuing during Plaintiff's disability according to the terms of the policy;

(iv) Reimburse Plaintiff's costs, disbursements, and other expenses of this litigation, including reasonable attorneys' fees and experts' fees, pursuant to 29 U.S.C. §1132(g); and

(v) Provide such other and further relief as the Court deems just and proper.

Dated: **July 29, 2019**      **Respectfully submitted:**

By: s/ Katherine L. MacKinnon
Katherine L. MacKinnon (#170926)
Nicolet Y. Lyon (#0391954)
LAW OFFICE OF KATHERINE L. MACKINNON, P.L.L.C.
2356 University Ave W. Ste. 230
(952) 915-9215 (ph)
(952) 915-9217 (fax)
sarah@katemackinnon.com
***Counsel for Plaintiff Peter A. Kaminski***